T.C. Memo. 2008-232


UNITED STATES TAX COURT


ROBERT B. AND JANET E. HELLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13656-06.              Filed October 20, 2008.


        R determined that Ps are liable for additions to tax
pursuant to sec. 6653(a)(1) and (2), I.R.C., for their 1983,
1984, and 1985 tax years and pursuant to sec. 6661(a),
I.R.C., for their 1983 tax year.

        <u>Held</u>: Ps are liable for the additions to tax.


        <u>John E. Lahart</u>, for petitioners.

        <u>Andrew R. Moore</u>, <u>Catherine Caballero</u>, and <u>Nhi T. Luu</u> for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WHERRY, Judge:  This case is before the Court on a petition for redetermination of three affected items notices of deficiency in which respondent determined that petitioners are liable for the following additions to tax:

|  | Additions to Tax | | |
| Year | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661(a) |
| 1983 | $550.00 | [1] | $2,750 |
| 1984 | 9.35 | [1] | --- |
| 1985 | 15.15 | [1] | --- |

[1]50 percent of the interest due on deficiencies of $11,000, $187, and $303 for the 1983, 1984, and 1985 tax years, respectively.

Unless otherwise indicated, section references are to the Internal Revenue Code, as amended and in effect for the tax years at issue.  The issues for decision are whether petitioners are liable for each of the additions to tax determined by respondent.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts and accompanying exhibits are hereby incorporated by reference into our findings.  At the time they filed their petition, petitioners resided in California.

Mr. Heller has a degree in business from UCLA.  Following college and the military, he worked as a stockbroker for Merrill Lynch.  He later worked in sales and marketing in the technology

sector for various corporations, including Control Data Corporation, Cisco Systems, Inc., and Oracle Corporation.

Sometime in the early 1980s George Bell (Mr. Bell), described at trial by Mr. Heller as a "salesperson" and "chartered financial analyst",[1] advised Mr. Heller to invest in a limited partnership called Contra Costa Jojoba Research Partners (CCJRP), which was involved in research about and the growing of jojoba beans. Before investing in CCJRP, Mr. Heller received a prospectus relating to CCJRP. According to Mr. Heller, the prospectus contained caveats as to the risks and tax benefits associated with an investment in CCJRP. Mr. Heller provided the prospectus to his certified public accountant (C.P.A.), William M. Miller (Mr. Miller), who informed Mr. Heller that CCJRP "looked like a pretty good investment" and that the tax writeoff associated with an investment in CCJRP was "limited * * * compared to others." In addition, Mr. Heller conducted his own independent research.

On November 30, 1983, petitioners acquired 10 units in CCJRP for $27,500, or $2,750 per unit. They paid $11,000 upon closing and signed a promissory note for the remaining $16,500.

In 1983, 1984, and 1985, the tax years at issue, CCJRP filed with the Internal Revenue Service and provided to petitioners

---

[1]At trial, Mr. Heller also described Mr. Bell as a salesperson who he believed had received a commission on the purchase by petitioners of their interest in CCJRP.

Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., in which CCJRP allocated to petitioners ordinary losses of $25,000, $490, and $2,582, respectively.  In turn, on their 1983, and presumably also their 1984, and 1985 joint Forms 1040, U.S. Individual Income Tax Return, petitioners claimed ordinary losses relating to their interest in CCJRP of $25,000, $490, and $2,582, respectively as deductions in computing their taxable income for those years.  Petitioners' 1983 joint Federal income tax return was prepared by Mr. Miller.  It appears that Mr. Miller also prepared their 1984 and 1985 joint returns.

On May 30, 1989, respondent sent petitioners a notice of final partnership administrative adjustment (FPAA) issued to CCJRP for the 1983 tax year.  FPAAs issued to CCJRP for the 1984 and 1985 tax years were mailed to CCJRP's Tax Matters Partner, Paul E. Vallely, on April 12, 1989.  On July 13, 1989, a petition in the name of CCJRP, Charles B. Toepfer, Tax Matters Partner, was filed with the Court at docket No. 17323-89.  On January 28, 1994, to settle the case at docket No. 17323-89, the tax matters partner and respondent filed a stipulation to accept and be bound by the result in Utah Jojoba I Research v. Commissioner (Utah Jojoba I), a test case docketed at No. 7619-90.

The Court issued an opinion in Utah Jojoba I on January 5, 1998, in which it held that the partnership at issue was not entitled to deduct its losses for research and development

expenditures.  See <u>Utah Jojoba I Research v. Commissioner</u>, T.C. Memo. 1998-6.  On April 11, 2005, the Court entered a decision against CCJRP upholding as correct the partnership item adjustments as determined and set forth in the FPAAs for the 1983, 1984, and 1985 tax years.  That decision was not appealed.

On June 19, 2006, respondent issued the aforementioned affected items notice of deficiency with respect to petitioners' 1983 tax year.  On June 26, 2006, respondent issued petitioners the aforementioned affected items notices of deficiency for their 1984 and 1985 tax years.  Petitioners then filed a timely petition with this Court.  A trial was held on May 17, 2007, in San Francisco, California.

## OPINION

### I.   Additions to Tax Under Section 6653(a)(1) and (2)

Section 6653(a)(1) and (2) imposes additions to tax if any part of any underpayment of tax is due to negligence or disregard of rules and regulations.[2]  For the purposes of this statute, negligence is defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under

---

[2]Those additions to tax are for (1) an amount equal to 5 percent of the underpayment and (2) an amount equal to 50 percent of the interest payable under sec. 6601 with respect to the portion of the underpayment which is attributable to negligence. Such interest runs for the period beginning on the last date prescribed by law for payment of such underpayment and ending on the date of the assessment of the tax.  Sec. 6653 (a)(1) and (2).

the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299).

The Court of Appeals for the Ninth Circuit, to which an appeal lies in this case absent a stipulation to the contrary, has held that a determination as to negligence for purposes of sections 6653(a) and 6661(a) in a case involving a deduction for loss that results from an investment "depends upon both the legitimacy of the underlying investment, and due care in the claiming of the deduction." Sacks v. Commissioner, 82 F.3d 918, 920 (9th Cir. 1996), affg. T.C. Memo. 1994-217.

Petitioners contend that they were not negligent because they invested in CCJRP only after receiving the independent opinion of their C.P.A., to whom they had provided the documents supplied to them by CCJRP. Petitioners further contend that Mr. Heller, who had investment expertise, did his own thorough research before investing in CCJRP.

Respondent counters that petitioners failed to act reasonably because, before investing in CCJRP, they did not seek independent advice as to the agricultural viability of jojoba farming in the southwestern United States. Although respondent concedes that petitioners sought the advice of their C.P.A., Mr. Miller, respondent asserts that Mr. Miller was provided a

"limited collection of information" and "reviewed it cursorily and orally represented to [p]etitioners little more than a comparison to contemporary oil and gas tax shelter projects." Moreover, Mr. Miller "did not have any expertise in either farming or complex taxation matters" and "was not qualified to give the requisite advice." Respondent notes that, despite the tax risks boldly identified in CCJRP's prospectus, "Petitioners negligently failed to have the document reviewed by an independent tax attorney."

Concerning petitioners' deduction of losses stemming from their investment in CCJRP, respondent points out that petitioners claimed a $25,000 loss on their 1983 Federal income tax return after acquiring ten units in CCJRP on November 30, 1983, for $11,000 in cash and promissory notes for the remaining $16,500. Respondent argues that "Considering the significance of the loss claimed, it would have been reasonable and prudent for petitioners to seek advice from an attorney trained in taxation" before claiming those losses on their 1983, 1984, and 1985 Federal income tax returns.

As explained below, although reasonable reliance on professional advice may serve as a defense to the additions to tax for negligence, see United States v. Boyle, 469 U.S. 241, 251 (1985), petitioners have not demonstrated that they acted with due care with respect to their investment in CCJRP and the

resulting tax deductions claimed in 1983, 1984, and 1985 for losses relating to that investment.

CCJRP's underlying activity lacked legitimacy, as we decided in Utah Jojoba I. See Utah Jojoba I Research v. Commissioner, supra ("[W]e hold that Utah I was not actively involved in a trade or business and also lacked a realistic prospect of entering a trade or business."); see also Welch v. Commissioner, T.C. Memo. 2002-39. Because CCJRP and the jojoba partnership at issue in Utah Jojoba I are essentially identical, we need not rehash in detail the license agreement and the research and development (R & D) agreement entered into between CCJRP and U.S. Agri Research & Development Corp (the same entity with which the partnership at issue in Utah Jojoba I entered into a license agreement and an R & D agreement). Suffice it to say that "the R & D agreement was designed and entered into solely to provide a mechanism to disguise the capital contributions of the limited partners as currently deductible expenditures and thus reduce the cost of their participation in the farming venture." Utah Jojoba I Research v. Commissioner, supra. As the Court has stated in a number of other cases involving nearly identical jojoba partnerships:

> First, the principal flaw in the structure of Blythe II was evident from the face of the very documents included in the offering. A reading of the R & D agreement and licensing agreement, both of which were included as part of the offering, plainly shows that the licensing agreement canceled or rendered

ineffective the R & D agreement because of the concurrent execution of the two documents. Thus, the partnership was never engaged, either directly or indirectly, in the conduct of any research or experimentation. Rather, the partnership was merely a passive investor seeking royalty returns pursuant to the licensing agreement. Any experienced attorney capable of reading and understanding the subject documents should have understood the legal ramifications of the licensing agreement canceling out the R & D agreement. However, petitioners never consulted an attorney in connection with this investment, nor does it appear that they carefully scrutinized the offering themselves.

Christensen v. Commissioner, T.C. Memo. 2001-185; see Finazzo v. Commissioner, T.C. Memo. 2002-56; Serfustini v. Commissioner, T.C. Memo. 2001-183; Carmena v. Commissioner, T.C. Memo. 2001-177; Nilsen v. Commissioner, T.C. Memo. 2001-163.

Although we do not doubt that petitioners sought some professional advice and that Mr. Heller conducted some of his own research before investing in CCJRP, this case resembles other jojoba cases in which the Court has sustained the imposition of an addition to tax under section 6653(a)(1) and (2).  See, e.g., Christensen v. Commissioner, supra; Serfustini v. Commissioner, supra; Nilsen v. Commissioner, supra.

For example, Christensen v. Commissioner, supra, involved taxpayers who had obtained the advice of their C.P.A. before investing in a jojoba partnership.  In sustaining the imposition of an addition to tax under section 6653(a)(1) and (2), the Court noted, among other things, that the C.P.A. "did not provide

petitioners with a written opinion about the investment."  Id.
Moreover, the Court observed that the record lacked evidence
demonstrating that the C.P.A. "conducted any independent
investigation to determine whether the specific research and
development proposed to be conducted by or on behalf of the
partnership would have qualified for deductions under section
174."  Id.

As was the case in Christensen, petitioners' C.P.A.,
Mr. Miller, did not testify at trial.[3]  Nor did he provide
petitioners with a written opinion concerning their investment in
CCJRP.  As a consequence, the specific nature of his advice to
petitioners is unclear.  At trial, Mr. Heller provided a vague
description regarding the advice offered by Mr. Miller.
According to Mr. Heller, Mr. Miller

> said, well, from his professional opinion, it
> looked like a pretty good investment, it looked like
> the economics were there, the demand for the product
> was there, and I remember him saying to the effect, as
> a limited writeoff in this program compared to others
> so it looked like a very conservative program to go
> into.  And he would recommend that I go into that
> program itself.

Mr. Heller's vague testimony concerning Mr. Miller's advice
is insufficient to support petitioners' reasonable-reliance
argument.  This is a highly factual inquiry, and the dearth of

---

[3]The Christensens' C.P.A. was deceased.  It is unknown why
Mr. Miller did not testify at trial.

evidence in the record leads us to conclude that petitioners'
arguments are unpersuasive. See Bass v. Commissioner, T.C. Memo.
2007-361 ("[T]he determination of negligence is highly
factual.").[4]

The fact that Mr. Heller conducted his own research before
investing in CCJRP does not alter our opinion. At trial, he
testified that he invested in CCJRP because he learned of
jojoba's many uses and because he believed that there was great
demand for jojoba. However, he was also aware that there was
some tax benefit associated with his investment. This is no
different than the aforementioned cases in which the Court found
that the taxpayers "acted on their enthusiasm for the potential
uses of jojoba and acted with knowledge of the tax benefits of
making the investment." Nilsen v. Commissioner, supra.

Nor does the fact that Mr. Miller prepared petitioners'
1983, 1984, and 1985 joint Federal income tax returns shield them
from liability for the section 6653(a)(1) and (2) additions to
tax. Aside from Mr. Heller's self-serving testimony, there is no
evidence in the record as to the specific nature of Mr. Miller's

[4]A guiding principle is that similarly situated taxpayers
should be treated similarly. See Hassebrock v. Commissioner,
T.C. Memo. 1983-255 n.3 ("Although we are required to decide this
case on its own facts, we must also see that similarly situated
taxpayers are treated the same way."). Petitioners' reasonable-
reliance defense does not differ materially from those of the
taxpayers found to be unavailing in the aforementioned cases.
See supra pp. 9-10.

advice.  Owing to a lack of evidence offered by petitioners, the Court is not convinced that a fully informed competent tax professional ever advised them regarding the propriety of their claimed 1983, 1984, and 1985 CCJRP-related deductions of $25,000, $490, and $2,582, respectively.  That is particularly troublesome in this case considering that petitioners invested $11,000 in CCJRP in 1983 and that same year claimed a $25,000 deduction for a loss relating to that investment.[5]  Under the circumstances, petitioners acted with a lack of due care in claiming as deductions on their 1983, 1984, and 1985 joint Federal income tax returns ordinary losses of $25,000, $490, and $2,582, respectively, relating to their interest in CCJRP.  Consequently, petitioners are liable for the section 6653(a)(1) and (2) additions to tax.[6]

---

[5]Although petitioners also signed a promissory note for $16,500, there is no evidence in the record as to whether they ever made payments on that note.

[6]We note that this case is distinguishable from Kantor v. Commissioner, 998 F.2d 1514 (9th Cir. 1993), affg. in part and revg. in part T.C. Memo. 1990-380, in which the Court of Appeals for the Ninth Circuit reversed this Court's affirmance of the imposition of a sec. 6653(a) addition to tax on the basis that the experience and involvement of the general partner and the lack of warning signs could reasonably have led investors to believe that they were entitled to deductions in light of the undeveloped state of the law regarding sec. 174.  The Court of Appeals explained that the Supreme Court's decision in Snow v. Commissioner, 416 U.S. 500 (1974), left unclear the extent to which research must be "in connection with" a trade or business for purposes of qualifying for an immediate deduction under sec. 174.  See, e.g., Nilsen v. Commissioner, T.C. Memo. 2001-163.

(continued...)

II.  Addition to Tax Under Section 6661(a) for Petitioners' 1983

     Tax Year

     Section 6661(a) provides for an addition to tax of 25

percent of the amount of any underpayment attributable to a

substantial understatement.[7]  There is a "substantial

understatement" of income tax for any tax year where the amount

of the understatement exceeds the greater of (1) 10 percent of

the tax required to be shown on the return for the taxable year

or (2) $5,000.  Sec. 6661(b)(1)(A).  However, the amount of the

understatement is reduced to the extent attributable to an item

(1) for which there is or was substantial authority for the

taxpayer's treatment thereof, or (2) with respect to which the

relevant facts were adequately disclosed on the taxpayer's return

or an attached statement.  See sec. 6661(b)(2)(B).[8]

---

[6](...continued)
Unlike the partnership in Kantor, CCJRP was neither engaged in a
trade or business nor conducting research and development, either
directly or indirectly.  See Utah Jojoba I Research v.
Commissioner, T.C. Memo. 1998-6.

[7]In 1983, sec. 6661(a) provided for a 10-percent addition to
tax.  The amount of the sec. 6661(a) addition to tax was later
increased to 25 percent for additions to tax assessed after Oct.
21, 1986.  Omnibus Budget Reconciliation Act of 1986, Pub. L.
99-509, sec. 8002, 100 Stat. 1951.  The retroactive increase of
the amount of the penalty from 10 percent to 25 percent does not
violate petitioners' constitutional rights to equal protection or
due process.  See Licari v. Commissioner, 946 F.2d 690, 692-695
(9th Cir. 1991), affg. T.C. Memo. 1990-4.

[8]Where the understatement at issue is attributable to a tax
shelter, adequate disclosure is inconsequential; and, in addition
(continued...)

In a very short section of their brief, petitioners state without supporting argument that they are not liable for the section 6661 addition to tax.  Respondent contends that petitioners' underpayment of tax for 1983 was the result of a substantial understatement of tax for that year.  Respondent further contends that petitioners have "provided no authority to either substantiate their claim nor outweigh the authority presented."  We agree with respondent that petitioners are liable for the section 6661(a) addition to tax.

Petitioners do not argue that they had substantial authority for claiming the loss on their 1983 Federal income tax return, and they have not demonstrated that they adequately disclosed the facts relevant to their investment in CCJRP on their 1983 tax return or on an attached statement.

Rev. Proc. 83-21, 1983-1 C.B. 680, applicable to tax returns filed in 1983, lists information which is deemed sufficient disclosure with respect to certain items, none of which is involved in this case.  Notwithstanding the inapplicability of Rev. Proc. 83-21, supra, a taxpayer may make adequate disclosure

---

[8](...continued)
to substantial authority, the taxpayer must demonstrate a reasonable belief that the tax treatment claimed was more likely than not proper.  Sec. 6661(b)(2)(C).  Because the result would be the same in this case whether or not we label CCJRP a tax shelter, we will analyze petitioners' entitlement to a reduction of the sec. 6661(a) addition to tax as though CCJRP were not a tax shelter.

if the taxpayer provides sufficient information on the return to enable the Commissioner to identify the potential controversy involved. See Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987). However, "Merely claiming the loss, without further explanation," as petitioners did, is insufficient to alert respondent to the controversial nature of the claimed partnership loss. Robnett v. Commissioner, T.C. Memo. 2001-17. In addition, petitioners did not attach any statement to their 1983 return. As a result, the Court sustains the imposition of a section 6661(a) addition to tax.

III. Anti-Stacking Argument

On brief, citing section 1.6662-1(c), Income Tax Regs., petitioners argue that "respondent applied the penalty interest provision under section 6621(c)(3) and then again under 6653(a)(2) for the same understatement" and that "[T]he anti-stacking regulations were promulgated to end this result."[9] That argument lacks merit.

The anti-stacking provision referred to by petitioners pertains to accuracy-related penalties imposed under section 6662, which is effective only with respect to tax returns due after December 31, 1989. Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721, 103 Stat. 2395. The additions

---

[9]The anti-stacking rule is actually contained in sec. 1.6662-2(c), Income Tax Regs.

to tax at issue in this case were not imposed pursuant to section 6662 and relate to petitioners' 1983, 1984, and 1985 joint Federal income tax returns, which were due to be filed long before section 6662 took effect.  Simply stated, the regulation cited by petitioners is inapplicable here.

The Court has considered all of petitioners' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.